## COHEN v. PETTY.
### No. 5771.

Court of Appeals of the District of Columbia.
Argued May 5, 1933.
Decided May 29, 1933.

Leon Pretzfelder, of Washington, D. C., for appellant.

Roger J. Whiteford and Walter M. Bastian, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Plaintiff's declaration alleged that on December 14, 1930, she was riding as a guest in defendant's automobile; that defendant failed to exercise reasonable care in its operation, and drove it at a reckless and excessive rate of speed so that he lost control of the car and propelled it off the road against an embankment on the side of the road, as the result of which plaintiff received permanent injuries. The trial judge gave binding instructions, and the plaintiff appeals.

There were four eyewitnesses to the accident, namely, plaintiff and her sister on the one side, and defendant and his wife on the other. All four were occupants of the car. Defendant was driving the car, and his wife was sitting beside him. Plaintiff and her sister were in the rear seat. Plaintiff is a retired school teacher, and defendant is a real estate agent who attended to her property and collection of her rents. They had known one another for a number of years, and plaintiff and her sister frequently drove out in the country with defendant and his wife. On the occasion of the injury, defendant called at plaintiff's house pursuant to an engagement, and plaintiff and her sister got into the automobile, which defendant then drove to his own house, where his wife got in, and the party proceeded through Washington to Sil-

ver Spring, and thence out the Colesville Pike. After passing the Country Club, and when somewhere near Four Corners and five or six miles from Silver Spring, the automobile suddenly swerved out of the road, hit the abutment of a culvert, and ran into the bank, throwing plaintiff and her sister through the roof of the car onto the ground.

Plaintiff's sister estimated the speed of the car just before the accident somewhere between thirty-five and forty miles an hour, and plaintiff herself, who had never driven a car, testified she thought it was nearer forty-five. The place of the accident was just beyond a long and gradual curve in the road. Plaintiff testified that just before the accident, perhaps a minute, she heard the defendant, who, as we have said, was driving the car, exclaim to his wife, "I feel sick," and a moment later heard his wife exclaim in a frightened voice to her husband, "Oh, John, what is the matter?" Immediately thereafter the car left the road and the crash occurred. Her sister, who testified, could not remember anything that occurred on the ride except that, at the time they passed the Country Club, the car was being driven about thirty-five or forty miles an hour and that the occupants of the car were engaged in a general conversation. The road was of concrete and was wide. Plaintiff, when she heard defendant's wife exclaim, "What is the matter?" instead of looking at the driver of the car, says she continued to look down the road, and as a result she did not see and does not know what subsequently occurred, except that there was a collision with the embankment.

Defendant's evidence as to what occurred just before the car left the road is positive and wholly uncontradicted. His wife, who was sitting beside him, states that they were driving along the road at a moderate rate of speed when all of a sudden defendant said, "Oh, Tree, I feel sick"—defendant's wife's name is Theresa, and he calls her Tree. His wife looked over, and defendant had fainted. "His head had fallen back and his hand had left the wheel, and I immediately took hold of the wheel with both hands, and then I do not remember anything else until I waked up on the road in a strange automobile." The witness further testified that her husband's eyes were closed when she looked, and that his fainting and the collision occurred in quick sequence to his previous statement, "Oh, Tree, I feel so sick." The defendant himself testified that he had fainted just before the crash, that he had never fainted before, and that so far as he knew he was in good health, that on the day in question he had had breakfast late, and had had no luncheon, but that he was not feeling badly until the moment before the illness and the fainting occurred. He explained the incident as follows: "I was going along, just casually along, and I said 'My, Tree, I feel awfully sick,' and with that I went back like that [indicating]. I just remember my hands getting away from the wheel. I did not have time to think of any danger or anything else. I just fainted out and passed out."

The other testimony, that of a woman who arrived shortly after the accident and conveyed plaintiff and her sister to the hospital, and that of a physician who testified generally with regard to fainting spells, is not material.

The sole question is whether, under the circumstances we have narrated, the trial court was justified in taking the case from the jury. We think its action was in all respects correct.

It is undoubtedly the law that one who is suddenly stricken by an illness, which he had no reason to anticipate, while driving an automobile, which renders it impossible for him to control the car, is not chargeable with negligence. Armstrong v. Cook, 250 Mich. 180, 229 N. W. 433; Slattery v. Haley, Dom. Law Rep., 1923 (3), p. 156.

In the present case the positive evidence is all to the effect that defendant did not know and had no reason to think he would be subject to an attack such as overcame him. Hence negligence cannot be predicated in this case upon defendant's recklessness in driving an automobile when he knew or should have known of the possibility of an accident from such an event as occurred.

As the plaintiff wholly failed to show any actionable negligence prior to the time the car left the road, or causing or contributing to that occurrence, and as the defendant's positive and uncontradicted evidence shows that the loss of control was due to defendant's sudden illness, it follows the action of the lower court was right. Even if plaintiff's own evidence tended more strongly than it does to imply some act of negligence, it would be insufficient to sustain a verdict and judgment upon proof such as the defendant offered here of undisputed facts, for in such a case the inference must yield to uncontradicted evidence of actual events.

Affirmed.

MEMO.—A motion was made in this case to substitute, as appellant, Lillie H. Cohen, executrix of the estate of Jeanette Cohen,

who died after taking this appeal. The motion was not pressed, and in view of our decision on the merits we have no occasion to notice it.